**C.O. LAW, APC**
Clark Ovruchesky, Esq. (SBN: 301844)
co@colawcalifornia.com
2404 Broadway, Suite 150
San Diego, California 92102
Telephone: (619) 356-8960
Facsimile:  (619) 330-7610

*Attorneys for Plaintiff*,
Rhane Leon Moore

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **RHANE LEON MOORE,** | Case No.: 5:23-cv-1538 |
| **Plaintiff,** | **COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:** |
| v. | 1.) **THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §§ 1681, ET SEQ.; AND** |
| **SOUTHWEST CREDIT SYSTEMS, L.P., SYNOVUS FINANCIAL CORP d/b/a FIRST PROGRESS CARD, EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION LLC, and EQUIFAX INFORMATION SERVICES LLC,** | 2.) **CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT, CAL. CIV. CODE §§ 1785.1, ET SEQ.** |
| **Defendants.** | **JURY TRIAL DEMANDED** |

///
///
///
///
///
///

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

## INTRODUCTION

1. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. ("FCRA"), to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2. Plaintiff **RHANE LEON MOORE** ("Plaintiff"), through his attorneys, brings this lawsuit to challenge the actions of Defendants **SOUTHWEST CREDIT SYSTEMS, L.P. ("SCS", "Furnisher-Defendants", or "Defendants"), SYNOVUS FINANCIAL CORP d/b/a FIRST PROGRESS CARD ("SFC", "Furnisher-Defendants", or "Defendants"), EXPERIAN INFORMATION SOLUTIONS, INC. ("Experian, "Credit Bureaus", or "Defendants"), TRANS UNION LLC ("TransUnion, "Credit Bureaus", or "Defendants"), and EQUIFAX INFORMATION SERVICES LLC ("Equifax, "Credit Bureaus", or "Defendants")** with regard to Defendants' reporting of erroneous negative and derogatory reports to Plaintiff's credit report, as that term is defined by 15 U.S.C. § 1681a(g) and Defendant's failure to correct such, which Defendant knew or should have known was erroneous and which caused Plaintiff damages.

3. Plaintiff makes these allegations on information and belief, with the exception of allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

4. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

5. Unless otherwise stated, all the conduct engaged in by Defendants occurred in California.

6. Any violations by Defendants were knowing and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

7. Unless otherwise indicated, the use of any Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of that Defendant named.

## JURISDICTION AND VENUE

8. Jurisdiction of this Court arises pursuant to 28 U.S.C. §1331; 15 U.S.C. § 1681p; and, 28 U.S.C. § 1367 for supplemental state law claims.

9. This action arises out of Defendants' violations of (i) the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq. ("FCRA") and (ii) the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code §§ 1785.1. et seq. ("CCRAA").

10. The Court has personal jurisdiction over Defendants as Defendants conduct business within the State of California and have purposefully availed themselves of the laws and markets of the State of California and this district.

11. Venue is proper in the United States District Court, Central District of California pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides in the County of San Bernardino, State of California, which is within this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and, (iii) Defendants conducted business within this judicial district at all times relevant.

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

12. Plaintiff is a natural person who resides in the City of San Bernardino, County of San Bernardino, in the State of California. In addition, Plaintiff is a "consumer" as that term is defined by: Cal. Civ. Code § 1785.3(b) and 15 U.S.C. § 1681a(c).

13. Defendant SCS is a corporation, whose primary corporate address is in the City of Carrollton, in the State of Texas, and is authorized to do business in the State of California.

14. Defendant SFC is a corporation, whose primary corporate address is in the City of Columbus, in the State of Georgia, and is authorized to do business in the State of California.

15. Defendant EXPERIAN is a corporation, whose primary corporate address is in the City of Costa Mesa, in the State of California, and is authorized to do business in the State of California.

16. Defendant EQUIFAX is a corporation whose primary corporate address is in the City of Atlanta, in the State of Georgia, and is authorized to do business in the State of California.

17. Defendant TRANSUNION is a corporation whose primary corporate address is in the City of Chicago, in the State of Illinois, and is authorized to do business in the State of California.

18. SCS and SFC are each a furnisher of information as contemplated by FCRA sections 1681s-2(a) & (b), which regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions or experiences with any consumer.

19. Plaintiff is informed and believes, and thereon alleges, that Furnisher-Defendants in the ordinary course of business, regularly, on behalf of themselves or others, engage in "debt collection" as that term is defined by California Civil Code § 1788.2(b), and are each therefore a "debt collector" as

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

that term is defined by California Civil Code § 1788.2(c).

20. EQUIFAX, EXPERIAN, and TRANSUNION are each a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f) and Cal. Civ. Code § 1785.3.

21. The causes of action herein also pertain to Plaintiff's "consumer [credit] report" as that term is defined by 15 U.S.C. § 1681a(d)(1) and Cal. Civ. Code § 1785.3(c), in that inaccurate credit information was reported by Defendants regarding specific transactions and/or experiences pertaining to Plaintiff and Plaintiff's credit worthiness, credit standing, and credit capacity. Such credit information was used or was expected to be used, or collected in whole or in part, for the purposes of serving as a factor in establishing Plaintiff's eligibility for, among other things, credit to be used primarily for personal, family, household and employment purposes.

## GENERAL ALLEGATIONS

22. At all times relevant to this matter, Plaintiff was an individual residing within the State of California.

23. Furthermore, Defendant conducted business within the State of California at all times relevant.

24. On January 17, 2023, Plaintiff filed for a Chapter 7 bankruptcy in the United States Bankruptcy Court for the Central District of California in Riverside. Plaintiff's case was assigned Case Number 6:23-bk-10155 (the "Bankruptcy").[1]

25. Plaintiff's Bankruptcy successfully discharged on May 1, 2023, and Plaintiff's account and debt with Furnisher-Defendants was included in Plaintiff's discharge.

---

[1] The District Court has discretion to take judicial notice of the documents electronically filed in the bankruptcy case. *See*, *Atwood v. Chase Manahttan Mortg. Co.* (*In re Atwood*), 293 B.R. 227, 233 n.9 (B.A.P. 9th Cir.2003).

26. However, Furnisher-Defendants reported or caused to be reported inaccurate information after the Bankruptcy was filed and discharged on Plaintiff's credit reports.

27. The Consumer Data Industry Association's ("CDIA") Metro 2 format is the credit industry's standardized, objective reporting format used by furnishers to provide information about consumer accounts to consumer reporting agencies.[2]

28. Upon information and belief, Defendants have adopted the *Metro 2 Format Manual* as its standard instruction book in respect to credit reporting.

29. The CII status field is a critical field for consumers and directly relates to and impacts a consumer's credit worthiness.

30. CII Metro 2 Code "E" denotes that a Chapter 7 bankruptcy has been discharged.

31. The lack of an accurate reporting of the CII field makes it appear that a consumer has not addressed outstanding debt obligations through the bankruptcy process.

32. The lack of an accurate reporting of the CII field also suggests that creditors are free to collect against a consumer per their pre-bankruptcy contract terms, which is inaccurate and materially misleading due to the effect of the bankruptcy orders, such as the automatic stay of section 362 of Title 11, that exist to prevent post-petition collection activity, and the discharge order which enjoins post-discharge collection upon any *in personam* liability for a claim.

33. Accordingly, failure to report the correct CII indicator would prompt those making credit decisions to draw a more negative inference regarding a consumer's credit worthiness.

///

///

---

[2] *See* Consumer Financial Protection Bureau, Key Dimensions and Processes in the U.S. Credit Reporting System, available at: http://files.consumerfinance.gov/f/201212_cfpb_credit-reporting-white-paper.pdf

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

34. Once a Chapter 7 Bankruptcy is successfully completed, furnishers for unsecured accounts included in the bankruptcy, including Furnisher-Defendants' accounts, are instructed to report the CII status as "Discharged/completed through BK Chapter 7", report "Current Balance", "Scheduled Monthly Payment Amount", and "Amount Past Due" as "Zero" (i.e. $0), and report "D", i.e. "no data", in the "Payment History" section.

35. Moreover, as a result of a major class action settlement in 2008, the three nationwide CRAs—i.e. EQUIFAX, EXPERIAN, and TRANSUNION—have been required to revise their procedures as to how they report debts discharged in a chapter 7 bankruptcy.[3] The settlements essentially reverse the presumption of non-dischargeability that the CRAs had been applying to chapter 7 bankruptcies. They require the CRAs to treat all prebankruptcy debts as discharged, unless furnishers provide information showing that a debt was excludable from discharge. The CRAs are to no longer report as charged off or placed in collection debts that in fact have been discharged in bankruptcy.

36. These procedures rely on the fact that furnishers are contractually obligated to report debts with codes that correspond to the major categories of non-dischargeable debt (that is, student loans, unpaid taxes, domestic support obligations, and debts subject to reaffirmation agreements). Using what is termed an "Agreed Bankruptcy Coding," the CRAs are to set to zero the stated balance owed for other debts—those that usually are dischargeable—*and* show them as having been discharged. This whole process is easily automated because the CRAs normally can ascertain from the information in their own credit files when a consumer's prebankruptcy debt has not in fact been

---

[3] *White v. EXPERIAN Info. Solutions, Inc.*, Case No. CV 05-01070 (C.D. Cal. Aug. 19, 2008) (lead case number); *White v. EXPERIAN Info. Serv.*, L.L.C., Case. No. CV 05-7821 (C.D. Cal. Aug. 19, 2008); *White v. Trans Union*, L.L.C., Case No. CV 05-1073 (Aug. 19, 2008); *Hernandez v. EXPERIAN Info. Serv.*, L.L.C., Case. No. CV 06-3924 (C.D. Cal. Aug. 19, 2008).

discharged.

37. These revised procedures and assumptions were applied both retroactively *and* prospectively. With respect to current credit files, the three major CRAs were directed to retroactively "scrub" existing data to remove improper tradelines and civil judgments.

38. Despite this reform, there continue to be problems with improper reporting of discharged debts, including allegations that creditors have deliberately engaged in the practice in order to pressure debtors to pay off discharged debts, and even refusals to correct the reporting after being requested to do so by the debtor.[4]

39. Indeed, the frequency of cases in which debtors had complained of the failure to properly report accounts included in bankruptcy has led one court to observe the "sheer number of such cases may suggest that some creditors are systematically taking such action in an effort to diminish the value of a discharge in bankruptcy."[5]

40. However, despite this knowledge Furnisher-Defendants consistently followed faulty and deceptive procedures in their credit reporting practices for post-bankruptcy consumers like Plaintiff, the Credit Bureaus continued to fail to adopt reasonable procedures to eliminate the reporting errors that it knew or

---

[4] *See, e.g.*, *Belton v. GE Capital Consumer Lending* (*In re Belton*), 2014 WL 5819586 (Bankr. S.D.N.Y. Nov. 10, 2014). *See also* Jessica Silver Greenberg, Debts Canceled by Bankruptcy Still Mar Consumer Credit Scores, N.Y. Times, Nov. 12, 2014. *Keil v. EXPERIAN Info. Serv.*, 2014 WL 4477610 (N.D. Cal. Sept. 10, 2014) (in response to debtor's dispute, credit union stated its policy was to report all charged-off debts as unpaid, irrespective of bankruptcy discharge); *In re Haynes*, 2014 WL 3608891 (Bankr. S.D.N.Y. July 22, 2014) (debtor alleged that creditor refused his request to remove charge-off notation from account discharged in bankruptcy).

[5] *Norman v. Applied Card Sys.* (*In re Norman*), 2006 WL 2818814 (Bankr. M.D. Ala. Sept. 29, 2006).

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

should have reasonably been aware of.

41. The FCRA imposes obligations on CRAs relating to consumers who have filed petitions for bankruptcy that require such CRAs to report the particular chapter of Title 11 under which the petition was filed and that limit the amount of time they may report bankruptcy information to a maximum of ten years. 15 U.S.C. §§ 1681c. Nothing in this statutory provision of the FCRA suggests that there is an exception to a CRAs standard obligation to employ reasonable procedures to ensure maximum possible accuracy for bankruptcy-related information.[6]

42. Accordingly, the Credit Bureaus' conduct was willful and reckless disregard of their rights and obligations under the FCRA.

43. As explained in more detail below, Defendants failed to reference the bankruptcy filing and discharge in the "CII" credit reporting field in Plaintiff's credit reports with respect to Furnisher-Defendants' accounts successfully discharged through Plaintiff's Chapter 7 Bankruptcy.

44. Defendants also failed to report a zero balance for Plaintiff's account with Furnisher-Defendants, even though the account successfully discharged in the Bankruptcy.

45. The failure to report the correct status of "Discharged in Bankruptcy" with a zero balance inaccurately and misleadingly suggested that Plaintiff still has a personal legal responsibility to pay the alleged debts to Furnisher-Defendants, which is the opposite effect of receiving a Chapter 7 bankruptcy discharge.

---

[6] *See also* 16 C.F.R. 600 app. § 607(3)(A)(6); *id.* § 607(3)(F)(2) ("[A] consumer reporting agency may include delinquencies on debts discharged in bankruptcy in consumer reports, but must accurately note the status of the debt (e.g., discharged, voluntarily repaid)."); *id.* § 607(3)(F)(1) ("A consumer reporting agency must employ reasonable procedures to keep its file current on past due accounts (e.g., by requiring its creditors to notify the credit bureau when a previously past due account has been paid or discharged in bankruptcy)[.]"). *White v. Trans Union, LLC*, 462 F. Supp. 2d 1079, 1082 (C.D. Cal. 2006).

46. Furnishers utilizing the Metro 2 reporting standard correctly is crucial because the Metro 2 system creates a uniform standard for the meaning given to each field provided, which fosters consistency in how furnishers formulate data to report to the Credit Bureaus, which ultimately leads to objective credit evaluations and scores for consumers.

47. Moreover, the FCRA and CCRAA impose no requirement or mandate that a furnisher provide any information to a consumer reporting agency. Indeed, the CDIA has repeatedly noted that the act of furnishing information to a consumer reporting agency is completely voluntary.[7]

48. Because credit reporting is a voluntary act, Defendants' deviation from the Metro 2 format instructions—the industry standard and their respective chosen method of reporting—constitutes an inaccurate or misleading statement. This is because those making credit decisions, who would expect that furnishers like Furnisher-Defendants would adhere to the Metro 2 format, would view the reporting of accounts included in the Bankruptcy in their delinquent pre-bankruptcy form more negatively than if the accounts reported accurately.

49. In respect to their FCRA investigations, Plaintiff alleges Furnisher-Defendants, rather than train its employees how to properly review and investigate disputes, are generally expected to simply confirm whatever information being reported is accurate, rather than conducting an actual reasonable investigation.

50. Similarly, Plaintiff alleges the Credit Bureaus each have a policy of simply parroting whatever information is provided by furnishers rather than conducting reasonable reinvestigations under the FCRA and CCRAA.

---

[7] *See, e.g.,* Credit Reports: Consumers' Ability to Dispute and Change Inaccurate Information: Hearing Before the H. Comm. on Fin. Serv., 110 Congr. 50 (2007) (written statement of Stuart Pratt, President and CEO, Consumer Data Industry Association) ("not a single one of the more than 18,000 data furnishers has to provide a single record of data to our members").

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

51. This is because the investigation and reinvestigations conducted by the Defendants occur in a hurried, conveyor-belt styled atmosphere in which dispute operators are under pressure to process disputes quickly to meet production quotas. This atmosphere is conducive to a speed-minded dispute operator failing to consider, or not looking for, information that is relevant to the consumer's dispute.

52. Such conduct by Defendants is willful and reckless.

53. Furthermore, the Credit Bureaus' policies and procedures for maintaining and operating their internal databases were not reasonable, because they continued reporting patently inaccurate and materially misleading information after Plaintiff formally disputed the reporting.

54. The Credit Bureaus also had knowledge of the Bankruptcy and directly receiving notice of the Bankruptcy's successful discharge. Accordingly, the Credit Bureaus failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff and violated 15 U.S.C. § 1681e(b) and Cal. Civ. Code §1785.14(b).

55. As a direct and proximate result of the derogatory information furnished and reported by Defendants, Plaintiff has sustained actual damages including emotional distress, humiliation, embarrassment, anxiety, loss of sleep, defamation of character, pain and suffering, was impeded in seeking necessary products and services from vendors, and damages to his credit rating.

56. As a further direct and proximate result of Defendants' acts stated herein, Plaintiff has spent many hours and associated costs reviewing credit reports, disputing the incorrect information furnished by Defendants via certified mail, and incurred attorneys' fees and such further expenses in an amount to be determined at trial.

57. Plaintiff has also been denied in credit applications due to Defendants' reporting.

C.O. LAW, APC
2484 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

58. This has made Plaintiff unable and therefore averse to apply for credit because his credit score remains extremely low.

59. Plaintiff has also refrained from obtaining further credit knowing that Defendants' inaccurate reporting is appearing on his credit report.

60. This chilling effect has precluded Plaintiff from benefiting from Plaintiff's improving credit.

61. This chilling effect has also precluded Plaintiff from improving Plaintiff's credit further by establishing new positive accounts.

62. This inability has further exacerbated Plaintiff's frustration with Defendants since Plaintiff already made the difficult decision to file a bankruptcy in the first place.

63. Defendants' continued negative reporting has forced Plaintiff to unfairly suffer the burdens of a bankruptcy without any of the associated, and expected, benefits.

64. Namely, Plaintiff has been precluded from the fresh start that Plaintiff seeks.

### SFC
### INACCURATE AND MATERIALLY MISLEADING CREDIT INFORMATION
### RE: ACCOUNT NO.: *544303 (THE "ACCOUNT")

65. In an EQUIFAX, EXPERIAN, and TRANSUNION Credit Report dated June 2023 SFC reported the following inaccurate, misleading, and derogatory information for the above-referenced account number:

- Balance: $176
- Past Due Amount: $176
- Status: Account charged off. $176 written off. $176 past due as of June 2023.

66. There was no status update in the tradeline that this Account was discharged in Plaintiff's Bankruptcy.

///

///

C.O. LAW, APC
2484 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

67. It was inaccurate and materially misleading for SFC to report the above derogatory delinquencies related to Plaintiff's pre-Bankruptcy obligations after May 2023, because Plaintiff filed for Bankruptcy on May 1, 2023, at which point the automatic stay went into effect and severed SFC ability to enforce Plaintiff's purported pre-Bankruptcy obligations against Plaintiff personally in their pre-bankruptcy form.

68. The balances owing and inaccurate status reported by SFC post-discharge inaccurately and misleadingly suggested (to potential creditors) that Plaintiff: (1) Was still legally liable to repay the alleged debt; (2) Incurred new debt during the Bankruptcy; or (3) Reaffirmed the debt notwithstanding the discharge. SFC's reporting deviated from Metro 2 reporting instructions in these respects.

69. However, Plaintiff did not incur new debt with SFC during the Bankruptcy proceeding or reaffirm the Account in the Bankruptcy. Plaintiff's debt with SFC was discharged in the Bankruptcy.

70. Accordingly, pursuant to the terms of the Bankruptcy Orders and the Metro 2 reporting standards discussed, it was inaccurate and materially misleading for SFC to report delinquencies following Plaintiff's Bankruptcy filing and discharge.

71. The Bankruptcy Court confirmed that Plaintiff successfully completed the Bankruptcy and entered a Discharge Order on May 1, 2023. SFC received notice of the successful discharge through the Bankruptcy Noticing Center on or around May 3, 2023, via first class mail from the Bankruptcy Noticing Center.

72. Rather than using the bankruptcy information sent specifically to SFC to accurately update Plaintiff's Account on Plaintiff's credit report, which SFC knew or should have known existed, SFC continued reporting inaccurately on Plaintiff's credit reports. These notices from the bankruptcy court were

sufficient to inform SFC that a past due status with an outstanding balance amount would be "incomplete or inaccurate" and "materially misleading." *Huizar v. Wells Fargo Bank, N.A.*, 257 F. Supp. 3d 1103, 1109 (E.D. Cal. 2017).

73. SFC could have simply reviewed the bankruptcy records discussed above and received by SFC and recognized that their reporting of balance owing with no notation of the bankruptcy discharge following the Bankruptcy was inaccurate, misleading, and outdated. SFC should have also consulted the Metro 2 guidelines for bankruptcy accounts delineated above to confirm that the proper status following the Bankruptcy was "Discharged through Bankruptcy" with a zero balance. Instead, SFC chose to ignore their duty to update their obsolete reporting.

74. Therefore, SFC's inaccurate, materially misleading, and negative reporting of the Debt in light of their knowledge of the Bankruptcy was willful.

75. Through this conduct, SFC violated Cal. Civ. Code § 1785.25(a) by furnishing information to EQUIFAX that SFC knew or should known was inaccurate and materially misleading.

76. Furthermore, the Credit Bureaus' policies and procedures for maintaining and operating their internal databases were not reasonable, because they allowed the reporting of patently inaccurate and materially misleading information by SFC, despite having knowledge of the Bankruptcy and directly receiving notice of the Bankruptcy's successful discharge.

77. Specifically, the Credit Bureaus could have easily ascertained that the Account had no further obligation owed on it by reviewing the publicly available and accessible bankruptcy records discussed above, consulting the Metro 2 guidelines for bankruptcy accounts delineated above, and/or abiding by their obligations under the *White v. EQUIFAX Info Solutions, Inc. et al.* class action settlement terms discussed above.

C.O. LAW, APC
2484 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

78. Therefore, the Credit Bureaus' inaccurate and negative reporting of the Debt in light of their knowledge of the Bankruptcy was willful.

79. Accordingly, the Credit Bureaus failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff and violated 15 U.S.C. § 1681e(b) and Cal. Civ. Code §1785.14(b).

80. *Alternatively*, upon information and belief, SFC properly updated the Account's status as "Included/Discharged through Bankruptcy" with a zero balance and zero amount past due following the Bankruptcy. However, the Credit Bureaus unilaterally and inaccurately removed that status and included a balance owing, despite SFC's instructions.

81. Therefore, the Credit Bureaus' inaccurate and negative reporting of the Debt in light of their knowledge of the Bankruptcy was willful.

82. Therefore, the Credit Bureaus failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff and violated 15 U.S.C. § 1681e(b) and Cal. Civ. Code §1785.14(b).

83. On or about June 2023, Plaintiff disputed SFC's reported information regarding the Account pursuant to 15 U.S.C. § 1681I(a)(2) by notifying the Credit Bureaus, in writing, of the incorrect and inaccurate credit information furnished by SFC.

84. Specifically, Plaintiff sent a letter, via certified mail, to EQUIFAX (the "Dispute Letter"), requesting the above inaccurate information be deleted pursuant to Plaintiff's Bankruptcy Discharge and corresponding Metro 2 instructions. The letter specified the status should report as "discharged through bankruptcy" or the equivalent, no balance owing, and no scheduled payment due.

///

///

///

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

85. The Dispute Letter further requested that Defendants:

- Immediately delete the disputed derogatory information from my credit report and update my credit report accordingly.

- If you do not immediately correct the disputed information on my credit report, please include the "Consumer Dispute" section above as my dispute statement for this account on my credit report.

86. Upon information and belief, EQUIFAX timely notified SFC of Plaintiff's dispute, but they both continued reporting inaccurate, derogatory information.

87. SFC was required to conduct a reasonable investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.SC. § 1681s-2(b)(1)(A).

88. The Credit Bureaus were each required to conduct a reasonable reinvestigation of Plaintiff's dispute pursuant to 15 U.S.C. §1681i and Cal. Civ. Code §1785.16.

89. On or about June 2023, Plaintiff received letters from the Credit Bureaus stating that they received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6) and were providing the results of their (re)investigation.

90. SFC and the Credit Bureaus continued to report the following inaccurate and derogatory information on Plaintiff's credit with respect to the Account:

- Balance: $176

- Amount Past Due: $176

- Status: Charge Off

91. Once again, there was no status update in the tradeline that this Account was discharged in Plaintiff's Bankruptcy.

92. The Credit Bureaus did not provide notice to Plaintiff that her dispute was "frivolous or irrelevant," pursuant to 15 U.S.C. § 1681i(a)(3).

///

///

C.O. LAW, APC
2484 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

93. Upon information and belief, the Credit Bureaus' reinvestigation was not reasonable. More specifically, the Credit Bureaus should have discovered from its records, including Plaintiff's official dispute letter, that the information SFC was reporting was inaccurate and materially misleading. The Credit Bureaus could have easily ascertained that the SFC account had no further obligation owed on it by reviewing the publicly available and accessible bankruptcy records discussed above, consulting the Metro 2 guidelines for bankruptcy accounts delineated above, or contacting Plaintiff for more information.

94. Therefore, the Credit Bureaus conducted a superficial "reinvestigation" and merely doubled-down on their inaccurate reporting for the Account. This has continued to hurt Plaintiff's credit standing.

95. Even with notice of the Bankruptcy filing and discharge, the Credit Bureaus allowed SFC to report the above inaccurate information despite their obligations under the *White v. EXPERIAN Info Solutions, Inc. et al.* class action settlement terms discussed above.

96. Rather than using the publicly available bankruptcy information the Credit Bureaus knew or should have known existed, the Credit Bureaus chose to allow SFC to continue reporting inaccurately on Plaintiff's credit reports.

97. Therefore, the Credit Bureaus' inaccurate and negative reporting of the Debt in light of their knowledge of the Bankruptcy was willful and reckless.

98. Accordingly, the Credit Bureaus failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff and violated 15 U.S.C. § 1681e(b) and Cal. Civ. Code §1785.14(b).

99. EQUIFAX also failed to conduct a reasonable reinvestigation of Plaintiff's dispute, as required by 15 U.S.C. §1681i and Cal. Civ. Code §1785.16.

///

///

///

C.O. LAW, APC
2484 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

100. Upon information and belief, SFC's investigation was also not reasonable. More specifically, SFC should have discovered from its records, including Plaintiff's official dispute letters, that the information SFC was reporting was inaccurate and materially misleading. Specifically, SFC could have simply reviewed the bankruptcy records discussed above and recognized that their reporting of an outstanding balance with no bankruptcy status following the Bankruptcy was inaccurate, misleading, and outdated.

101. SFC should have also consulted the Metro 2 guidelines for bankruptcy accounts delineated above to confirm that the proper status following the Bankruptcy was "Discharged through Bankruptcy" with a zero balance.

102. Accordingly, SFC failed to conduct a reasonable investigation with respect to the disputed information as required by 15 U.SC. § 1681s-2(b) by:

    a. Failing to remove all of the disputed and incorrect information;

    b. Failing to update Plaintiff's Account (history); and

    c. Failing to notate, as required, Plaintiff's dispute.

103. Through this conduct, SFC has violated Cal. Civ. Code § 1785.25(a) by furnishing information to EQUIFAX, i.e. each a consumer reporting agency, that SFC knew or should known was inaccurate and materially misleading.

104. Defendants failed to review all relevant information provided by Plaintiff in the dispute to the Credit Bureas as required by and in violation of 15 U.SC. § 1681s-2(b)(1)(B).

105. Due to Defendants' failure to reasonably (re)investigate, they each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C).

106. Plaintiff's efforts to correct Defendants' erroneous and negative reporting of the Debt by communicating Plaintiff's dispute with Defendants were fruitless.

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

107. Defendants' continued inaccurate and negative reporting of the Debt in light of its knowledge of the actual error was willful.

108. Defendants' failure to correct the previously disclosed inaccuracies on Plaintiff's credit report was intentional and in reckless disregard of its duty to refrain from reporting inaccurate information. Accordingly, Defendants willfully and negligently failed to comply with its duty to reasonably investigate Plaintiff's dispute.

109. Defendants' inaccurate reporting damaged Plaintiff's creditworthiness.

110. By inaccurately reporting account information relating to the Debt after notice and confirmation of its errors, Defendants failed to take the appropriate measures as determined in 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E).

## SCS
### INACCURATE AND MATERIALLY MISLEADING CREDIT INFORMATION
### RE: ACCOUNT NO.: *945854 (THE "ACCOUNT")

111. In an EQUIFAX Credit Report dated May 2023, SCS reported the following inaccurate, misleading, and derogatory information for the above-referenced account number:

- Balance: $218
- Status: Unpaid

112. There was no status update in the tradeline that this Account was discharged in Plaintiff's Bankruptcy.

113. It was inaccurate and materially misleading for SFC to report the above derogatory delinquencies related to Plaintiff's pre-Bankruptcy obligations after May 2023, because Plaintiff filed for Bankruptcy on May 1, 2023, at which point the automatic stay went into effect and severed SCS's ability to enforce Plaintiff's purported pre-Bankruptcy obligations against Plaintiff personally in their pre-bankruptcy form.

///

///

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

114. The balances owing and inaccurate status reported by SCS post-discharge inaccurately and misleadingly suggested (to potential creditors) that Plaintiff: (1) Was still legally liable to repay the alleged debt; (2) Incurred new debt during the Bankruptcy; or (3) Reaffirmed the debt notwithstanding the discharge. SCS's reporting deviated from Metro 2 reporting instructions in these respects.

115. However, Plaintiff did not incur new debt with SCS during the Bankruptcy proceeding or reaffirm the Account in the Bankruptcy. Plaintiff's debt with SCS was discharged in the Bankruptcy.

116. Accordingly, pursuant to the terms of the Bankruptcy Orders and the Metro 2 reporting standards discussed, it was inaccurate and materially misleading for SCS to report delinquencies following Plaintiff's Bankruptcy filing and discharge.

117. The Bankruptcy Court confirmed that Plaintiff successfully completed the Bankruptcy and entered a Discharge Order on May 1, 2023.

118. On or about June 2023, Plaintiff disputed SCS's reported information regarding the Account pursuant to 15 U.S.C. § 1681I(a)(2) by notifying EQUIFAX, in writing, of the incorrect and inaccurate credit information furnished by SCS.

119. Specifically, Plaintiff sent a letter, via certified mail, to EQUIFAX (the "Dispute Letter"), requesting the above inaccurate information be deleted pursuant to Plaintiff's Bankruptcy Discharge and corresponding Metro 2 instructions. The letter specified the status should report as "discharged through bankruptcy" or the equivalent, no balance owing, and no scheduled payment due.

///
///
///
///

120. The Dispute Letter further requested that SCS and EQUIFAX:

- Immediately delete the disputed derogatory information from my credit report and update my credit report accordingly.
- If you do not immediately correct the disputed information on my credit report, please include the "Consumer Dispute" section above as my dispute statement for this account on my credit report.

121. Upon information and belief, EQUIFAX timely notified SCS of Plaintiff's dispute, but they both continued reporting inaccurate, derogatory information.

122. SCS was required to conduct a reasonable investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.SC. § 1681s-2(b)(1)(A).

123. EQUIFAX was required to conduct a reasonable reinvestigation of Plaintiff's dispute pursuant to 15 U.S.C. §1681i and Cal. Civ. Code §1785.16.

124. On or about June 2023, Plaintiff received a letter from EQUIFAX stating that they received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6) and were providing the results of their (re)investigation.

125. SCS and EQUIFAX continued to report the following inaccurate and derogatory information on Plaintiff's credit with respect to the Account:

- Balance: $218
- Status: Unpaid

126. Once again, there was no status update in the tradeline that this Account was discharged in Plaintiff's Bankruptcy.

127. EQUIFAX did not provide notice to Plaintiff that her dispute was "frivolous or irrelevant," pursuant to 15 U.S.C. § 1681i(a)(3).

128. Upon information and belief, EQUIFAX's reinvestigation was not reasonable. More specifically, EQUIFAX should have discovered from its records, including Plaintiff's official dispute letter, that the information SCS was reporting was inaccurate and materially misleading. EQUIFAX could have

easily ascertained that the SCS account had no further obligation owed on it by reviewing the publicly available and accessible bankruptcy records discussed above, consulting the Metro 2 guidelines for bankruptcy accounts delineated above, or contacting Plaintiff for more information.

129. Therefore, EQUIFAX conducted a superficial "reinvestigation" and merely doubled-down on their inaccurate reporting for the Account. This has continued to hurt Plaintiff's credit standing.

130. Even with notice of the Bankruptcy filing and discharge, EQUIFAX allowed SCS to report the above inaccurate information despite their obligations under the *White v. EXPERIAN Info Solutions, Inc. et al.* class action settlement terms discussed above.

131. Rather than using the publicly available bankruptcy information EQUIFAX knew or should have known existed, EQUIFAX chose to allow SCS to continue reporting inaccurately on Plaintiff's credit reports.

132. Therefore, EQUIFAX's inaccurate and negative reporting of the Debt in light of their knowledge of the Bankruptcy was willful and reckless.

133. Accordingly, EQUIFAX failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff and violated 15 U.S.C. § 1681e(b) and Cal. Civ. Code §1785.14(b).

134. EQUIFAX also failed to conduct a reasonable reinvestigation of Plaintiff's dispute, as required by 15 U.S.C. §1681i and Cal. Civ. Code §1785.16.

135. Upon information and belief, SCS's investigation was also not reasonable. More specifically, SCS should have discovered from its records, including Plaintiff's official dispute letters, that the information SCS was reporting was inaccurate and materially misleading. Specifically, SCS could have simply reviewed the bankruptcy records discussed above and recognized that their reporting of an outstanding balance with no bankruptcy status following the Bankruptcy was inaccurate, misleading, and outdated.

C.O. LAW, APC
2484 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

136. SCS should have also consulted the Metro 2 guidelines for bankruptcy accounts delineated above to confirm that the proper status following the Bankruptcy was "Discharged through Bankruptcy" with a zero balance.

137. Accordingly, SCS failed to conduct a reasonable investigation with respect to the disputed information as required by 15 U.SC. § 1681s-2(b) by:

      a. Failing to remove all of the disputed and incorrect information;

      b. Failing to update Plaintiff's Account (history); and

      c. Failing to notate, as required, Plaintiff's dispute.

138. Through this conduct, SCS has violated Cal. Civ. Code § 1785.25(a) by furnishing information to EQUIFAX, i.e. each a consumer reporting agency, that SCS knew or should known was inaccurate and materially misleading.

139. SCS and EQUIFAX failed to review all relevant information provided by Plaintiff in the dispute to EQUIFAX as required by and in violation of 15 U.SC. § 1681s-2(b)(1)(B).

140. Due to SCS and EQUIFAX's failure to reasonably (re)investigate, they each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C).

141. Plaintiff's efforts to correct SCS and EQUIFAX's erroneous and negative reporting of the Debt by communicating Plaintiff's dispute with SCS and EQUIFAX were fruitless.

142. SCS and EQUIFAX's continued inaccurate and negative reporting of the Debt in light of its knowledge of the actual error was willful.

143. SCS and EQUIFAX's failure to correct the previously disclosed inaccuracies on Plaintiff's credit report was intentional and in reckless disregard of its duty to refrain from reporting inaccurate information. Accordingly, SCS and EQUIFAX willfully and negligently failed to comply with its duty to reasonably investigate Plaintiff's dispute.

144. SCS and EQUIFAX's inaccurate reporting damaged Plaintiff's creditworthiness.

145. By inaccurately reporting account information relating to the Debt after notice and confirmation of its errors, SCS and EQUIFAX failed to take the appropriate measures as determined in 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E).

**CAUSES OF ACTION**

**COUNT I**

**VIOLATION OF THE FAIR CREDIT REPORTING ACT**

**15 U.S.C. §§ 1681 ET SEQ.**

**[AGAINST ALL DEFENDANTS]**

146. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

147. The foregoing acts and omissions constitute numerous and multiple willful, reckless, or negligent violations of the FCRA, including, but not limited to, each and every one of the above-cited provisions of the FCRA, 15 U.S.C. § 1681.

148. As a result of each and every negligent noncompliance of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2), from Defendants.

149. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow, pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Defendants.

///
///
///
///

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

**COUNT II**

**VIOLATION OF CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT**

**CAL. CIV. CODE § 1785.1 ET SEQ.**

**[AGAINST ALL DEFENDANTS]**

150. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

151. The foregoing acts and omissions constitute numerous and multiple violations of the California Consumer Credit Reporting Agencies Act.

152. As a result of each and every negligent violation of the CCRAA, Plaintiff is entitled to damages as the Court may allow pursuant to Cal. Civ. Code § 1785.31(a)(1) from Defendants.

153. As a result of each and every willful violation of the CCRAA, Plaintiff is entitled to damages as the Court may allow pursuant to Cal. Civ. Code § 1785.31(a)(2) against Defendants, including punitive damages of $100-$5,000 per willful violation.

154. Because Furnisher-Defendant is a partnership, corporations association, or other entity, and is therefore each a "person" as that term is defined by Cal. Civ. Code § 1785.3(j), Furnisher-Defendant is and always was obligated to not furnish information on a specific transaction or experience to any consumer credit reporting agency if they knew or should have known that the information is incomplete or inaccurate, as required by Cal. Civ. Code § 1785.25(a). Thus, Furnisher-Defendant violated Cal. Civ. Code § 1785.25(a).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered against Defendants:

- An award of actual damages, in an amount to be determined at trial or damages of a maximum of $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), against Defendants for each incident of willful noncompliance of the FCRA;

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

- An award of punitive damages, as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2), against Defendants for each incident of willful noncompliance to the FCRA;

- An award for costs and reasonable attorney's fess, pursuant to 15 U.S.C. § 1681n(a)(3), against Defendants for each incident of negligent noncompliance of the FCRA;

- An award of actual damages in an amount to be determined at trial pursuant to 15 U.S.C. § 1681o(a)(1) against Defendants for each incident of negligent noncompliance of the FCRA;

- An award of costs and litigation and reasonable attorney's fees pursuant 15 U.S.C. § 1681n(a)(3) and 15 U.S.C. § 1681o(a)(2) against Defendants for each incident of noncompliance of the FCRA;

- An award of actual damages, in an amount to be determined at trial, pursuant to Cal. Civ. Code § 1785.31(a)(2)(A), against Defendants;

- Award of attorneys' fees and costs pursuant to Cal. Civ. Code § 1785.31(a)(1); and, Cal. Civ. Code § 1785.31(d) against Defendants;

- An award of punitive damages of $100-$5,000 per willful violation of Cal. Civ. Code § 1785.25(a), pursuant to Cal. Civ. Code § 1785.31(a)(2)(B) against Defendants;

- For equitable and injunctive relief pursuant to Cal. Civ. Code § 1785.31(b) against Defendants; and

- Any and all other relief the Court deems just and proper.

Dated: August 2, 2023                    Respectfully submitted,

                                         **C.O. LAW, APC**


                                         By: /s/ Clark Ovruchesky
                                         CLARK OVRUCHESKY, ESQ.
                                         ATTORNEY FOR PLAINTIFF

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

**TRIAL BY JURY**

155. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: August 2, 2023                    Respectfully submitted,

                                         **C.O. LAW, APC**


                                         By: /s/ Clark Ovruchesky
                                             CLARK OVRUCHESKY, ESQ.
                                             ATTORNEY FOR PLAINTIFF